### THE VALOIL NO. 14.

### THE COMANCHE.

### VALOIL TRANSP. CORPORATION v. CARD TOWING LINE, Inc., et al.

### No. 16557.

District Court, E. D. New York.

Sept. 14, 1943.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libelant.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for respondent.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan, of New York City, of counsel), for respondent-impleaded and claimant.

MOSCOWITZ, District Judge.

The Valoil Transportation Corporation, owner of the barge Valoil No. 14, entered into a contract of towage with the respondents Card Towing Line, Inc., and Lee Transit Corporation, by the terms of which the Valoil No. 14 was to be towed from Tremley Point, New Jersey, to the dock of Petroleum Heat & Power Company at Stamford, Connecticut. By the terms of the contract the barge was to arrive at the stage of high water.

The tug Comanche, owned by Southern States Towing Lines, Inc., was employed by the respondents to do the towing. The Comanche did not commence the towage until about 4:30 p. m. on January 6th, 1942, and reached Stamford Harbor at about 2 a. m. on January 7th, 1942.

The respondents and the tug Comanche were familiar with the conditions at Stamford Harbor and the necessity of landing the barge on high water. The Comanche arrived at Stamford three hours after the high water stage. It was part of the agreement of the towage that the towage was to commence so as to have the barge arrive at Stamford during the stage of high water.

While the tow was en route the barge captain made inquiry of the master of the Comanche whether it was the intention of the master of the tug to continue on through to Stamford. Upon being answered in the affirmative, the captain of the barge stated that the barge would arrive on the falling tide and asked permission to communicate with its owners. This permission was refused. The barge was in all respects seaworthy and in good condition. The wind was blowing from the northwest with great force from midnight January 5th until the afternoon of January 6th. During the towage spray came over the bow which caused ice to be formed on the anchor windlass. After the tow had arrived inside the breakwater at Stamford the Comanche's master ordered the barge captain to drop his starboard anchor. Due, however, to the tug's maneuvering and the ground swell, the anchor chain parted. The captain of the barge informed the master of the Comanche that the compressor band on the port anchor windlass was covered with ice and that if he were given some little time he could release it by using hot water. The tug master disregarded the request of the captain of the barge and stated that he intended to go into the harbor. The tug placed the starboard bow corner of the barge to the dock, thus leaving the starboard stern corner away from the dock. The master of the tug informed the captain of the barge that the barge would have to remain in that condition to await the rising tide in order to place the barge alongside the dock. Within a short time thereafter the barge settled on the bottom and sustained damage to the hull and cargo.

The tug was at fault. It arrived at the dock after high water. There was no delivery of the barge to the consignee. The master knew or should have known that the barge would ground upon the falling tide.

The tug Comanche is liable in the first instance, the respondents having secondary liability for failure to perform the agreement of towage with the libelant. The accident was caused without fault on the part of the libelant.

Decree for libelant.

Settle findings and decree on notice.